IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3007-BO

| | |
|---|---|
| GARY MICHAEL ALSTON, JR., )<br>Plaintiff, )<br> )<br>v. )<br> )<br>MAJOR JOHN MCRAINEY, et al., )<br>Defendants. ) | **ORDER** |

Gary Michael Alston, Jr., filed this pro se 42 U.S.C. § 1983 action. He alleges excessive force, along with other claims, while a pretrial detainee at the Cumberland County Detention Center. Now before the court is defendants' motion to dismiss. (D.E. # 22) Plaintiff was notified of the pending motion, but has not responded. For the following reasons, the matter is dismissed.

## FACTUAL ALLEGATIONS AND CLAIMS

Alston alleges that on July 6, 2009, while held as a pretrial detainee in Cumberland County Detention Center, he was placed in Special Management for suicide watch and mental health reasons. (Amended Compl.) Alston states that due to his sexual orientation he was placed away from certain inmates for which he asserts a claim of discrimination. (Id.) On July 12th, Corporal Carl approached his cell and explained to Alston that he was going to be moved to the different location. (Id.) Alston states he allowed Corporal Carl to handcuff him behind his back. (Id.) He next states that because he was not "walking the speed he wanted me to he . . . punched me with a closed fist on my side/stomach." (Id.) Thereafter, Alston alleges he requested medical treatment and access to security cameras, but those requests were denied. (Id.) Due to this denial, he alleges he became depressed and refused to eat or to take his medication. (Id.) Without identifying the

medication that he declined to take, Alston alleges that he lost control of his bowel and urinary functions, and that he remained, ignored, in an unsanitary cell. (Id.)

While confusing, it appears that Alston then tried to file a criminal action. (Id.) He also alleges that the Sheriff and Chief Jailer spoke with the Assistant District Attorney and his appointed counsel. (Id.) His counsel allegedly told Alston that he should plead guilty or he would continue to be incarcerated in the Cumberland County Detention Center. (Id.) As a result, Alston claims his plea should be declared void. (Id.) Alston states that he has been treated at UNC-Chapel Hill for his diagnosis as HIV positive, but was billed. (Id.) Additionally, following his plea adjudication, Alston was transferred from the county detention center to the State's prison system. (Id.) He seeks $83,500 from each defendant. (Id.)

## DISCUSSION

In considering defendants' motion to dismiss, the court applies the governing standard. See, e.g., Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949–52 (2009); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 560–65 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Under this standard, the court accepts the complaint's factual allegations as true, but need not accept the legal conclusions drawn from the facts. Ashcroft, 129 S. Ct. at 1949–50; Giarratano, 521 F.3d at 302. "Additionally, the complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" Giarratano, 512 F.2d at 302 (quoting Twombly, 550 U.S. at 570).

i.  Plea Issue

First, claims "fall[ing] within the 'core' of habeas corpus ... [are] not cognizable when brought pursuant to § 1983." Nelson v. Campbell, 541 U.S. 637, 643 (2004). Specifcially, to

2

recover money damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must show that the underlying conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. See Heck v. Humphrey, 512 U.S. 477, 486–87 (1994. "A district court must undertake a case specific analysis to determine whether success on the claims would necessarily imply the invalidity of a conviction or sentence." Thigpen v. McDonnell, 273 F. App'x 271, 272 (4th Cir. 2008) (per curiam) (unpublished). See Muhammad v. Close, 540 U.S. 749, 751, 755 (2004) (per curiam) ("Heck's requirement to resort to state litigation and federal habeas before § 1983 is not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence."). Because Alston's conviction for obtaining property by flase pretenses and identity theft has not been overturned or otherwise invalidated, Alston's claim fails.

ii. Criminal Action

Alston appears to take issue with his inability to pursue a criminal matter in State court arising from the alleged incident on July 12, 2009, i.e. the punch to his side. He claims that he was not given access to his video tape to use as evidence in this endeavor. From this, he contends he became depressed and refused to take his medication.

No citizen has a right to institute a criminal prosecution. Linda R. v. Richard V., 410 U.S. 614, 619 (1973) ( "In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); see also Keenan v. McGrath, 328 F.2d 610, 611 (1st Cir.1964) (allowing a private individual to initiate a criminal prosecution would

3

circumvent the legal safeguards provided for persons accused of crime, such as arrest by an officer on probable cause or pursuant to a warrant, prompt presentment for preliminary examination by a United States Commissioner or other officer empowered to commit persons charged with offenses against the United States, and indictment by a grand jury.) The claim is dismissed as meritless.

iii. <u>Excessive Force</u>

Excessive force claims of arrestees and pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. See <u>Orem v. Rephann</u>, 523 F.3d 442, 446 (4th Cir. 2008); <u>Riley v. Dorton</u>, 115 F.3d 1159, 1166 (4th Cir.1997) (en banc), abrogated on other grounds by <u>Wilkins v. Gaddy</u>, — U.S. —, —, 130 S.Ct. 1175, 1178–79, 175 L.Ed.2d 995 (2010) (per curiam). In analyzing such a claim, "[t]he proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Taylor v. McDuffie</u>, 155 F.3d 479, 483 (4th Cir.1998) (internal quotation marks omitted), *abrogated on other grounds by* <u>Wilkins</u>, 130 S.Ct. at 1178–79. This analysis requires consideration of whether the given situation required the use of force and "the relationship between the need and the amount of force used." <u>Orem</u>, 523 F.3d at 446.

Furthermore, an action by a prison guard may be malevolent yet not amount to cruel and unusual punishment. See <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). As the Court made clear in Hudson, "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." <u>Id.</u> (internal quotation marks omitted). Here, we have a guard who is attempting to escort an inmate to a different location in an attempt to keep him separate from another inmate. While Alston contends he complied with the order to be handcuffed, he states he was not moving quickly enough for the guard. Therefore, by his own

4

account, the guard's actions which constituted a single strike were caused by the guard's thought the inmate was malingering and failing to comply with a direct order. Thus the action, while in hindsight, may have been unnecessary, it was applied in good faith. The fact that there is no injury bolsters this conclusion. The injury Alston argues about is the loss of bowel and urinary control, which was self induced by his refusal to take an unknown medication. Lastly, Alston does not defend his claims from the motion to dismiss. The claim fails.

iv.  Payment of Medical Bills

Although the Supreme Court has held that a state must provide inmates with basic medical care, there is no constitutional right to free health care. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 245 n. 7 (1983) ("Nothing we say here affects any right a hospital or government entity may have to recover from a detainee the cost of medical services provided to him."). The allocation of the cost of the medical care is a matter of state law and, if the governmental entity can obtain the medical care needed for an inmate only by paying for it, then it must pay. Briscoe v. Mose, 2007 WL 3088134 (W.D. Va. 2007) (unpublished). Alston's assertion is that he was provided with outside care of his HIV positive diagnosis, not that he was denied care in any dimension, nor does he allege the care was inadequate. His claim is solely that he has now been billed for the care provided and this claim is meritless.

v.  Discrimination

Alston claims that direction from the classification coordinator to be placed in a different location from certain inmates due to his sexual orientation amounted to discrimination. First, federal courts have consistently rejected sexual orientation as a suspect classification, and have declined to identify homosexuals as a protected class. See Price-Cornelison v. Brooks, 524 F.3d

5

1103, 1113 n. 9 (10th Cir.2008) (collecting cases). Therefore, even if defendants' decision to place Alston away from certain inmates was based on his sexual orientation, the decision is subject to "rational basis" review because government action that "neither burdens a fundamental right nor targets a suspect class" will be upheld "so long as it bears a rational relation to some legitimate end." Id., at 631. "[R]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness or logic' " of government activity. Heller v. Doe, 509 U.S. 312, 319 (1993) (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313(1993)). Here, Alston's own pleadings establish that defendants placed him away from other inmates due to a belief that he posed a threat to himself (suicide watch), and to protect him from "certain" others. Prisons unquestionably have a legitimate concern in promoting inmate safety, and placing Alston away from certain inmates is rationally related to promoting inmate safety. Alston's claim fails.

D.  Conclusion

Accordingly, defendants' motion to dismiss (D.E. # 20) is GRANTED and the case is CLOSED.

SO ORDERED, this the 2 day of September 2011.

TERRENCE W. BOYLE
United States District Judge